WHIRLPOOL CORPORATION

v.

Ketkeo NAKHONEINH.

Supreme Court of Tennessee,
at Nashville.

Jan. 28, 2002.

D. Russell Thomas and Herbert Schaltegger, Murfreesboro, Tennessee, for the appellant, Ketkeo Nakhoneinh.

David Terence Hooper, Brentwood, Tennessee, for the appellee, Whirlpool Corporation.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON and WILLIAM M. BARKER, JJ., joined.

We granted this appeal to determine whether the employee proved by a preponderance of the evidence that (1) she complied with the notice requirement of Tenn. Code Ann. § 50–6–201 and that (2) her injury was caused by her employment as required by Tenn.Code Ann. § 50–6–103(a). We hold that she complied with the notice requirement and that her injury arose out of her employment. The judgment of the trial court and the Special Workers' Compensation Appeals Panel is reversed. The case is remanded to the trial court for proceedings consistent with this opinion.

### FACTS AND PROCEDURAL HISTORY

Ketkeo Nakhoneinh, a native of Laos, was fifty-eight years old at the time of trial. She completed only six years of education in Laos. After moving to the

United States in 1979, Ms. Nakhoneinh completed one and one-half years of vocational training. She speaks and reads some English but has difficulty understanding and communicating in English. Ms. Nakhoneinh has been employed by various industrial factories since 1979. In 1989, she began working at Whirlpool Corporation ("Whirlpool") performing hand-intensive assembly line work.

In 1996, Ms. Nakhoneinh began experiencing pain in her left wrist. Dr. Richard Garvin, her primary care physician, diagnosed Ms. Nakhoneinh with carpal tunnel syndrome. Dr. Garvin did not comment on possible causes for her wrist pain. At that time, Ms. Naknoneinh filed a Sickness and Accident report with Whirlpool seeking short term disability for a non-work related injury. She applied two additional times in 1997 for Sickness and Accident benefits related to her left wrist.

On July 9, 1998, Ms. Nakhoneinh went to the Whirlpool medical department complaining of pain in her hands. When the nurse was unable to understand her, Ms. Nakhoneinh asked Lucy Phillips, a union steward who could communicate with Ms. Nakhoneinh, to accompany her to the medical department. Ms. Phillips told the nurse that Ms. Nakhoneinh's hands were hurting and that she needed to see a doctor. The nurse responded that the procedure was for the Whirlpool medical department to treat the employee before sending the employee to a doctor. Ms. Nakhoneinh gave the nurse a statement of her medical restrictions from Dr. Garvin. Those restrictions required Ms. Nakhoneinh to refrain from repetitive hand motion and heavy lifting and to alternate hand usage. On July 10, 1998, Ms. Nakhoneinh applied for Sickness and Accident benefits. On the back of the Sickness and Accident form, Dr. Garvin indicated a diagnosis of bilateral carpal tunnel syndrome

for which he had been seeing Ms. Nakhoneinh since August of 1996. Whirlpool denied the claim and laid her off until she could return to work.

From July of 1998 through November of 1998, Dr. Garvin sent Whirlpool various forms indicating that Ms. Nakhoneinh remained under his care and restrictions. Whirlpool also received a notice on August 10, 1998, advising that Ms. Nakhoneinh was under the care of Dr. Jiroj Thephasdin, a doctor located in Merrillville, Indiana. Ms. Nakhoneinh sought treatment from Dr. Thephasdin because he spoke and understood her native language. The notice sent by Dr. Thephasdin diagnosed Ms. Nakhoneinh with carpal tunnel syndrome with cervical radiculopathy. Dr. Thephasdin referred Ms. Nakhoneinh to Dr. Kang I. Koh, a neurologist, for electrodiagnostic studies. On December 26, 1998, Dr. Thephasdin performed a right carpal tunnel release procedure based upon his examination and Dr. Koh's studies. Dr. Thephasdin opined that Ms. Nakhoneinh retained a four percent permanent partial impairment to her upper right extremity.

Whirlpool received a letter from Ms. Nakhoneinh's attorney on January 13, 1999. Attached to the letter was a document dated December 3, 1998, from Dr. Thephasdin stating that Ms. Nakhoneinh's condition was caused by chronic repetitive use of her hands and was work-related. On January 15, 1999, Whirlpool prepared an Employer's First Report of Work Injury. Whirlpool never presented Ms. Nakhoneinh with a panel of physicians.

On April 13, 1999, at Ms. Nakhoneinh's request, Dr. David Gaw performed an independent medical examination of her. Dr. Gaw diagnosed Ms. Nakhoneinh with post-operative carpal tunnel syndrome on the right wrist combined with bilateral overuse syndrome of her upper extremities. Based upon the *AMA Guidelines to*

*the Evaluation of Permanent Impairment,* 4th Ed., Dr. Gaw opined that Ms. Nakhoneinh retained a ten percent permanent partial impairment to her right upper extremity due to the post-operative carpal tunnel syndrome. He found no permanent anatomical impairment under the AMA Guidelines for the left-side overuse syndrome. Dr. Gaw did testify that the condition on her left side was a chronic or permanent condition. In addition, he testified that the cause of Ms. Nakhoneinh's condition was the repetitive activity of her job at Whirlpool. Dr. Gaw testified, however, that if Ms. Nakhoneinh did not complain of right wrist and hand pain while working at Whirlpool during or prior to July of 1998, causation was questionable.

At Whirlpool's request, Dr. Richard S. Lisella conducted an independent medical evaluation of Ms. Nakhoneinh on May 6, 1999. He concluded that she had mild changes in her wrist resulting from her previous carpal tunnel syndrome but the changes were not significant enough to account for her current symptoms. Dr. Lisella made no conclusion as to the cause of the injury.

The trial court held that Ms. Nakhoneinh failed to prove that her injuries were work-related. Further, the trial court concluded that Ms. Nakhoneinh did not comply with the notice requirements of Tenn. Code Ann. § 50–6–201. The trial court found that Ms. Nakhoneinh is able to read, write and understand most English and, therefore, was not excused from providing proper notice. In an alternative finding, the trial court assigned a vocational disability of ten percent to the right upper extremity had Ms. Nakhoneinh proven both notice and compensability.[1] The Spe-

cial Workers' Compensation Appeals Panel affirmed the trial court's judgment. Ms. Nakhoneinh appealed.

### *ANALYSIS*

#### *Standard of Review*

In workers' compensation cases, the standard of review is de novo upon the record, accompanied by a presumption of the correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2); *Cutler–Hammer v. Crabtree,* 54 S.W.3d 748, 753 (Tenn.2001). Application of this standard requires the Court to weigh in more depth the trial court's factual findings and conclusions in a workers' compensation case. *Cleek v. Wal–Mart Stores,* 19 S.W.3d 770, 773 (Tenn.2000). When the trial judge has seen and heard a witness's testimony, considerable deference must be accorded on review to the trial court's findings of credibility and the weight given to that testimony. *Townsend v. State,* 826 S.W.2d 434, 437 (Tenn.1992); *Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315, 315 (Tenn.1987). When the medical testimony, however, is presented by deposition, this Court may make an independent assessment of the medical proof to determine where the preponderance of the evidence lies. *Cooper v. Ins. Co. of N. Am.,* 884 S.W.2d 446, 451 (Tenn.1994).

#### I. *Causation*

Ms. Nakhoneinh argues that the trial court erred in finding that the injury to her wrist was not work-related. We agree. For a claim to be compensable, the injury which causes the employee's dis-

---

1. Although the trial court related its finding to the "upper extremity," it is clear from the evidence that the injury was limited to the arm, a scheduled member under the workers'

compensation statute. Tenn.Code Ann. 50–6–207(3)(A)(ii)(m) (listing arm as scheduled member).

ablement or death must arise out of and in the course of the employment. Tenn.Code Ann. § 50–6–103(a); *McCurry v. Container Corp. of Am.,* 982 S.W.2d 841, 843 (Tenn.1998). An accident arises out of the employment when, upon consideration of all the circumstances, a causal connection exists between the conditions under which the work is required to be performed and the resulting injury. *Fink v. Caudle,* 856 S.W.2d 952, 958 (Tenn.1993). Except in the most obvious cases, causation may only be established through expert medical testimony. *Thomas v. Aetna Life & Cas. Co.,* 812 S.W.2d 278, 283 (Tenn.1991). Although the employee has the burden of proving causation, reasonable doubt concerning the cause of the injury should be resolved in favor of the employee. *Long v. Tri–Con Indus. Ltd.,* 996 S.W.2d 173, 177 (Tenn.1999).

■ Ms. Nakhoneinh was examined by five doctors. Her medical reports from Dr. Garvin, Dr. Koh and Dr. Lisella are silent as to causation. Dr. Thephasdin stated in his letter of December 1998 that Ms. Nakhoneinh's bilateral carpal tunnel syndrome was caused by the repetitive overuse of her hands and was directly related to her work at Whirlpool. Likewise, Dr. Gaw diagnosed Ms. Nakhoneinh with overuse in both wrists and work-related carpal tunnel syndrome. Dr. Gaw, however, conceded that if Ms. Nakhoneinh did not complain of right wrist and hand pain while working at Whirlpool, then causation was questionable.

We recognize that the trial judge observed the employee's testimony and considerable deference must be accorded to the trial court's findings of credibility. *See Cutler–Hammer,* 54 S.W.3d at 753. We note, however, that those physicians who addressed the issue of causation testified that her condition was work-related and that no physician opined that it was not.

Reasonable doubt concerning the cause of her injury therefore should be resolved in favor of Ms. Nakhoneinh. *Long,* 996 S.W.2d at 177. Accordingly, we find by a preponderance of the evidence that Ms. Nakhoneinh's injury arose out of and in the course of her employment at Whirlpool.

## II. *Notice*

■ The trial court concluded that Ms. Nakhoneinh failed to give Whirlpool adequate notice of a work-related injury. Section 50–6–201 of the Tennessee Code Annotated provides:

(a) Every injured employee or such injured employee's representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer *who has no actual notice,* written notice of the injury ...; and no compensation shall be payable under the provisions of this chapter unless written notice is given the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give such notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

(b) In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee or such injured employee's representative shall provide notice to the employer of the injury within thirty (30) days after the employee:

(1) Knows or reasonably should know that such employee has suffered a work-related injury that has resulted in permanent physical impairment; or

(2) Is rendered unable to continue to perform such employee's normal work

activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities. (Emphasis added). Written notice, therefore, is unnecessary where the employer has actual knowledge of the injury. *Raines v. Shelby Williams Ind., Inc.,* 814 S.W.2d 346, 348–49 (Tenn.1991). The notice must reasonably convey to the employer that the employee's injury arose out of and in the course of the employment. *Jones v. Sterling Last Corp.,* 962 S.W.2d 469, 471 (Tenn.1998).

█ Ms. Nakhoneinh testified that she told the nurse in the Whirlpool medical department about the pain in her wrists during work hours on July 9, 1998. She went to see the nurse that day seeking medical assistance. The trial court did not find her testimony credible. Lucy Phillips, however, testified that on July 9, 1998, she helped Ms. Nakhoneinh tell the Whirlpool nurse that her wrists were hurting. In addition, Ms. Nakhoneinh and Ms. Phillips both testified that Ms. Nakhoneinh gave the nurse a form from Dr. Garvin instructing Ms. Nakhoneinh to refrain from repetitive hand motion and heavy lifting and to alternate hand usage. Neither the nurse nor any other witness testified to the contrary, and this evidence of actual notice remained unrebutted by Whirlpool. The evidence therefore preponderates against the trial court's finding that Whirlpool did not receive actual notice on July 9, 1998, that Ms. Nakhoneinh was having wrist pains resulting from her work.

█ Moreover, an employee is excused from giving notice of a gradually occurring injury until the employee has reason to know that the injury is work-related. *Pentecost v. Anchor Wire Corp.,* 695 S.W.2d 183, 185 (Tenn.1985). In *Pentecost,* we reasoned that the employee could not be expected to inform her employer within the thirty-day period that her injury was work-related because the employee's gradually occurring injury had no single event that signaled the work-related injury and because the employee's physicians had not advised her that her injury was work-related. *Id.* It was enough that the employee informed her employer regarding the facts of the injury of which the employee was aware or of which she reasonably should have been aware. *Id.* Further, an employee's limited understanding of his condition and his difficulty comprehending his rights and duties under the workers' compensation laws may justify a delay in statutory notice. *See Livingston v. Shelby Williams Ind., Inc.,* 811 S.W.2d 511, 514 (Tenn.1991).

The facts in this case are similar to those in *Pentecost.* There was no sudden accident that caused Ms. Nakhoneinh's pain. She informed Whirlpool while working in July of 1998 that her wrists were hurting. She gave the medical department the restrictions from Dr. Garvin concerning the use of her wrists. Thus, Ms. Nakhoneinh notified her employer of facts about the injury of which she was aware. In addition, she had difficulty communicating with both the Whirlpool nurse and her own physicians, often requiring the aid of an interpreter. Ms. Nakhoneinh's deposition was taken with the aid of her daughter, Sengchanh Souvirong, acting as an interpreter. An interpreter was also used at the trial. Ms. Nakhoneinh received the equivalent of a sixth grade education in Laos and limited vocational training in the United States. Her difficulty communicating and her lack of education further justify any possible delay in the mandatory written notice. Finally, a determination of causation was not made until December of 1998 by Dr. Thephasdin, who opined that Ms. Nakhoneinh's job caused her wrist pains. He was the first physician to ex-

press a view as to causation. Prior to receiving a medical diagnosis and determination as to the cause of her injury, Ms. Nakhoneinh could not be expected to know the nature and cause of the injury. Therefore, even if Ms. Nakhoneinh failed to give Whirlpool actual notice of her injury, the facts are sufficient to provide a reasonable excuse for not giving the required written notice within the statutory time limitation.

### III. Assessment of Disability

 In its alternative finding, the trial court assigned a ten percent vocational disability to Ms. Nakhoneinh's right arm. The trial court made no findings of fact as to any vocational disability to her left arm. The existence and extent of a permanent vocational disability are questions of fact for determination by the trial court and are reviewed de novo, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *Walker v. Saturn Corp.*, 986 S.W.2d 204, 207 (Tenn.1998).

 In assessing the degree of an employee's vocational disability, factors which should be considered are the employee's skills and training, education, local job opportunities, age, anatomical impairment rating, and capacity to work at the kinds of employment available in the employee's disabled condition. Tenn.Code Ann. § 50–6–241(b); *Walker*, 986 S.W.2d at 208. The claimant's own assessment of her physical condition and resulting disabilities must also be evaluated. *Uptain Constr. Co. v. McClain*, 526 S.W.2d 458, 459 (Tenn.1975). The trial court should consider both expert and lay testimony when deciding the extent of an employee's disability. *Hinson v. Wal Mart-Stores, Inc.*, 654 S.W.2d 675, 677 (Tenn.1983).

 With these principles in mind, we conclude that the evidence preponderates against the trial court's assessment of a ten percent vocational disability to Ms. Nakhoneinh's right upper extremity. Dr. Thephasdin opined that Ms. Nakhoneinh retains a four percent permanent partial impairment to her upper right extremity. Dr. Gaw testified that based upon the *AMA Guidelines to the Evaluation of Permanent Impairment*, 4th Ed., Ms. Nakhoneinh retains a ten percent permanent partial impairment to her right upper extremity due to post-operative carpal tunnel syndrome. In addition to the anatomical impairment assessed by these physicians, Ms. Nakhoneinh testified that her right and left arms and wrists continue to be very weak. Pain persists in both of her arms and wrists and is accompanied by swelling in her hands. Her ability to perform activities that require the use of her hands such as cooking, cleaning, and gardening is significantly reduced. Ms. Nakhoneinh's family members testified that her ability to engage in daily household activities is diminished. Further, Ms. Nakhoneinh's training is limited to one and one-half years of vocational training. The only type of work in which she has skills and training is industrial work, which frequently requires the repetitive use of the arms and hands. At the time of trial, she was fifty-eight years old with the approximate equivalency of a sixth grade education. An examination of these factors preponderates in favor of an increase in the trial court's assessment of vocational disability. Accordingly, we award a thirty percent permanent partial disability to Ms. Nakhoneinh's right arm.

The trial court assigned no vocational disability rating to Ms. Nakhoneinh's left arm. The record provides sufficient evidence that Ms. Nakhoneinh suffers from a permanent condition of the left arm. Permanency must be established before a disability rating may be assessed. *Hill v. Royal Ins. Co.*, 937 S.W.2d 873, 875

(Tenn.Sp.Workers Comp.1996). Dr. Gaw testified that the tendinitis and the overuse syndrome in the left arm were chronic and permanent conditions. He testified that the AMA Guidelines do not provide an impairment rating for these conditions. Dr. Gaw opined, however, that her condition was permanent because her symptoms dated back at least three years and the condition itself had persisted for longer than a year. Accordingly, we remand to the trial court to determine the vocational disability attributable to the work-related injury to Ms. Nakhoneinh's left arm.

### CONCLUSION

We hold that Ms. Nakhoneinh suffered a work-related injury while working at Whirlpool. Whirlpool received actual notice on July 9, 1998, of Ms. Nakhoneinh's gradually occurring injury. The evidence preponderates against the trial court's assessment of a ten percent vocational disability rating to her right arm. After consideration of all of the appropriate factors, we award a thirty percent vocational disability to the right arm. We hold that the employee proved a permanent disability to her left arm and remand to the trial court to determine the vocational disability attributable to this work-related injury and for proceedings consistent with this opinion. Costs are assessed to the appellee, Whirlpool Corporation, for which execution may issue if necessary.

ADOLPHO A. BIRCH, Jr., J., not participating.