FILED

December 16, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 11:50 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| BRADLEY WILSON<br>　　　Employee,<br>v.<br>DANA HOLDING CORP.<br>　　　Employer. | Docket No.: 2015-07-0143<br><br>State File Number: 50922-2015<br><br>Judge Amber E. Luttrell |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS AND DENYING TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, Bradley Wilson, pursuant to Tennessee Code Annotated section 50-6-239 (2014). The present focus of this case is the compensability of Mr. Wilson's bilateral carpal tunnel syndrome claim and his entitlement to medical benefits and temporary disability benefits. The central legal issues are whether Mr. Wilson is likely to prevail at a hearing on the merits regarding whether his injury arose primarily out of and in the course and scope of his employment and if Mr. Wilson gave proper notice of a work injury. For the reasons set forth below, the Court finds Mr. Wilson carried his burden of proof, Mr. Wilson demonstrated that he gave legally-sufficient notice and is entitled to medical benefits for his bilateral carpal tunnel syndrome, but he is not entitled temporary disability benefits at this time.

### History of Claim

Mr. Wilson is a thirty-year-old resident of Benton County, Tennessee. (T.R. 1.) He worked as a press operator for Dana Holding Corporation (Dana) in Paris, Tennessee. (Ex. 1.) Mr. Wilson testified he worked on a production line assembling oil coolers. As a press operator, he performed the same tasks repetitively, often for eleven hours a day. (Ex. 1.) He regularly used a hammer to remove pieces off a fixture during the assembly process. Mr. Wilson testified he worked five to seven days almost every week. He described his work as highly repetitive and stated those duties and his extensive work hours each week caused his carpal tunnel syndrome. Mr. Wilson testified he began

1

"having issues" around February 14.[1]  He took intermittent FMLA leave while seeing physicians and undergoing physical therapy. Mr. Wilson stated his physicians did not know the cause of his issues.[2]

According to the medical records, Mr. Wilson sought treatment with his family physician, Dr. Ken Berry, beginning April 14, 2015. (Ex. 4.) He reported symptoms of pain in his shoulders, joints, and numbness and tingling in his bilateral finger tips. Dr. Berry noted Mr. Wilson had physical therapy in the past and his issues began a couple of years prior to the visit. Following an exam, Dr. Berry diagnosed shoulder pain and tingling in the bilateral hands and fingers. He also ordered an MRI of both shoulders. Dr. Berry then referred Mr. Wilson to an orthopedist, Dr. Blake Chandler, for further evaluation.

Mr. Wilson saw Clay Nolen, FNP-BC of West Tennessee Bone and Joint (WTBJ) on April 30, 2015, for further evaluation of his shoulder complaints. *Id.* Mr. Wilson complained of shoulder pain, weakness, and numbness and tingling down into his forearms and fingertips. Mr. Wilson denied injury or trauma. He reported that his symptoms increased with reaching overhead. Mr. Nolen reviewed the shoulder MRI results and noted a normal left shoulder and possible AC joint inflammation in the right shoulder. Mr. Nolen ordered an EMG/NCS of both arms, which showed moderate to moderately severe median neuropathy at both wrists. *Id.*

Mr. Wilson returned to WTBJ on May 13, 2015, and saw Dr. Blake Chandler. *Id.* He reported difficulty sleeping and increased symptoms after repetitive motion. Following physical exam and review of the EMG/NCS, Dr. Chandler diagnosed moderately severe bilateral carpal tunnel syndrome and recommended a wrist splint.

Mr. Wilson provided notice to Dana of his alleged work injury by letter dated June 4, 2015. (Ex. 7.) In the letter, Mr. Wilson advised Dana of his carpal tunnel syndrome diagnosis, requested a panel of physicians, and requested to file a workers' compensation claim. He also sent an email the next day on June 5, 2015, to Ms. Andrea Gooch, Human Resources Manager for Dana, reporting the injury and requesting a panel of physicians. *Id.* Dana never offered Mr. Wilson a panel. Instead, on July 2, 2015, Dana denied the claim, stating the basis as "late reporting and no report of an accident." (Ex. 6.)

In support of its notice defense, Dana submitted affidavits of Mr. Wilson's supervisors, the maintenance manager, and the health and safety manager. (Ex. 3.) Dana's representatives consistently stated that Mr. Wilson never reported to them any work injury or carpal tunnel-related problems during his employment with Dana. They

---

[1] In the context of the proof offered at the Expedited Hearing, the Court interpreted Mr. Wilson's testimony to mean he had symptoms dating back to February 2014.

[2] Mr. Wilson did not identify the physician he saw initially.

further stated that Mr. Wilson never asked for assistance or accommodation with his job duties due to hand complaints or any medical condition related to his employment. Mr. Wilson's June 4, 2015 letter was Dana's first notice of his alleged work injury. *Id.*

Concerning medical causation, Mr. Wilson offered into evidence a letter dated July 30, 2015, from Dr. Berry, where he stated:

> Mr. Wilson has been a patient of mine for quite some time and we saw him in the clinic on May 14, 2015 with shoulder and arm pain with tingling in fingers and arms. We sent him for an MRI and then referred him to Dr. Chandler in Paris. Dr. Chandler ran an EMG and diagnosed him with moderate to severe bi-lateral carpal tunnel. I am well aware of Mr. Wilson's work and I believe that his current condition is definitely work related.

(Ex. 4.) Mr. Wilson also introduced a sworn affidavit from Dr. Berry where he stated, "It is my professional opinion, considering Mr. Bradley Wilson's past medical and work history, that his most recent employment as a Press Operator for Dana Corporation; [sic] is the sole cause for his severe bi-lateral carpal tunnel." (Ex. 2.) Mr. Wilson testified both Dr. Berry and Dr. Bingham told him that his carpal tunnel had to be related to his work, based upon his work schedule and lack of any repetitive hobbies outside of work.

Dana presented a causation letter from Dr. Chandler stating, "I cannot say with any medical certainty that the bilateral carpal tunnel syndrome is more than 50% caused by [h]is work." (Ex. 10.)

While seeking medical treatment in 2015, Mr. Wilson took FMLA leave from April 14, 2015, through April 29, 2015. *Id.* Dr. Berry provided an off-work note stating Mr. Wilson could return to work on April 29, 2015. When Mr. Wilson did not return to work, Dana terminated him on May 1, 2015.

Ms. Gooch testified by affidavit that Dana terminated Mr. Wilson from his employment on May 1, 2015, for job abandonment after he violated the company's three days "no call-no show" attendance policy. (Ex. 3.) Mr. Wilson testified he did not return to work because his FMLA leave was extended through May 13, 2015. *Id.* However, Mr. Wilson conceded that he did not receive the letter notifying him of his extended FMLA leave until sometime after his termination date.

Mr. Wilson filed a Petition for Benefit Determination seeking medical benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice adding a request for temporary disability benefits. (T.R. 2.) Mr. Wilson filed a Request for Expedited Hearing (T.R. 3.), and this Court heard the matter on December 3, 2015.

3

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

*Notice*

Dana contends Mr. Wilson failed to give proper notice of his alleged work injury. Dana submits that carpal tunnel syndrome is a gradually-occurring injury where notice must be given pursuant to Tennessee Code Annotated section 50-6-201(b) (2014).

Section 50-6-201(b) provides:

In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee or the injured employee's representative shall provide notice of the injury to the employer within thirty (30) days after the employee:
(1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or
(2) Is rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

*Id.*

4

Thus, in gradually-occurring injuries, employees are relieved from the notice requirement until they know or reasonably should know that their work caused their injury and that the injury either impaired them permanently or prevented them from performing normal work activities. *Banks v. United Parcel Serv., Inc.,* 170 S.W.3d 556, 561 (Tenn. 2005). Additionally, an employee may be unsure of the cause of his injury and therefore relieved of the notice requirement until a physician confirms the diagnosis. *Id.* (citing *Whirlpool Corp. v. Nakhoneinh,* 69 S.W.3d 164, 169 (Tenn. 2002)).

In this case, Dana contends Mr. Wilson knew or should have known he suffered a work-related injury *before* June 4, 2015, the date he gave notice. Mr. Wilson testified he had similar symptoms for approximately two years before he saw Dr. Chandler. Dr. Berry's April 24, 2015 correspondence, supporting Mr. Wilson's FMLA leave, indicated his familiarity with Mr. Wilson's job duties at Dana, and he opined the job might exacerbate his symptoms. However, Dana concedes Dr. Berry did not causally relate Mr. Wilson's condition to his work at that time. (Ex. 4.)

While it is true Mr. Wilson had symptoms in his shoulders going down into his hands and fingers for a period of time prior to giving notice on June 4, 2015, the uncontroverted proof at the hearing indicated Mr. Wilson did not know he had carpal tunnel syndrome until Dr. Bingham diagnosed the condition on May 8, 2015. Moreover, Mr. Wilson credibly testified he did not learn from a physician that his work caused his carpal tunnel syndrome until Dr. Bingham and Dr. Berry causally related it to his work duties. The earliest medical record causally relating Mr. Wilson's carpal tunnel syndrome to his work was Dr. Berry's letter dated July 30, 2015, where Dr. Berry stated, "I am aware of Mr. Wilson's work and I believe that his current condition is definitely work related."

In light of these facts and the totality of the evidence, the Court finds Mr. Wilson gave adequate notice of an injury to Dana within thirty days of his carpal tunnel syndrome diagnosis and knowledge that it was work-related pursuant to Tennessee Code Annotated section 50-6-201(b) (2014). The Court further finds the timing of Mr. Wilson's notice in no way inhibited Dana from timely investigating the facts while they were still readily accessible. Therefore, as a matter of law, Mr. Wilson came forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits on the issue of notice.

*Medical Causation*

To be compensable under the workers' compensation statutes, an injury must arise "primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(13) (2014). An injury means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.*

5

"An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B) (2014). Medical evidence is generally required in order to establish a causal relationship, "[e]xcept in the most obvious, simple and routine cases." *Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008) (quoting *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991)).

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2014) provides that an employer shall furnish to the employee such medical treatment as is "made reasonably necessary by accident." The opinion of the treating physician selected by the employee from the employer's designated panel of physicians shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(13)(E) (2014).

The medical opinions before this Court on the issue of causation are the opinions of Dr. Berry and Dr. Chandler. Since neither doctor was a treating physician from a panel of physicians, neither opinion carries any statutory presumption of correctness. Dana relies upon the opinion of Dr. Chandler, an orthopedic physician, who stated, "I cannot say with any medical certainty that the bilateral carpal tunnel syndrome is more than 50% caused by [h]is work." (Ex. 10.) Mr. Wilson relies upon the opinion of his family physician, Dr. Berry, who testified by affidavit and stated, "It is my professional opinion, considering Mr. Bradley Wilson's past medical and work history, that his most recent employment as a Press Operator for Dana Corporation; [sic] is the sole cause for his severe bi-lateral carpal tunnel." (Ex. 2.)

In weighing these conflicting causation opinions, the Court finds it significant that Dr. Chandler's causation letter fails to state any basis for his opinion that Mr. Wilson's carpal tunnel is not more than fifty percent caused by his work. Moreover, neither Dr. Chandler's causation letter nor his records indicate he was aware of Mr. Wilson's job position at Dana or his work duties. In contrast, Dr. Berry asserted in his causation letters and his affidavit that he is familiar with Mr. Wilson's job at Dana and his duties as a press operator. Dr. Berry further stated he is also aware of Mr. Wilson's medical history as his family physician. Based upon this knowledge, he unequivocally opined that Mr. Wilson's work as a press operator at Dana was the sole cause for his severe bilateral carpal tunnel.

Upon thorough consideration of these medical opinions and the totality of the medical proof, the Court finds Dr. Berry's causation opinion more persuasive. Thus, the Court finds Mr. Wilson presented sufficient proof from which the Court concludes he is likely to prevail at a hearing on the merits on the issue of medical causation and, therefore, is entitled to medical benefits for his carpal tunnel syndrome.

Mr. Wilson submitted medical bills from several providers for dates of service prior to June 4, 2015, when he first gave notice of a work injury to Dana. (Ex. 5.) Mr. Wilson also submitted a mileage reimbursement request for visits to physicians in April and May 2015. (Ex. 9.) Pursuant to Tennessee Code Annotated section 50-6-201 (2014), no compensation shall be paid until notice is given of a work injury. Accordingly, the Court finds that Mr. Wilson has not established that he is likely to prevail at a hearing on the merits regarding the payment of his past medical bills or mileage prior to June 4, 2015.

*Temporary Disability Benefits*

To establish entitlement to temporary total disability benefits as contemplated in Tennessee Code Annotated section 50-6-207(1) (2014), an employee must show that (1) he or she was totally disabled from work as a result of a compensable injury; (2) that a causal connection exists between the injury and the employee's inability to work; and (3) the duration of the period of the employee's disability. *Jewell v. Cobble Construction and Arcus Restoration,* No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015).

Temporary partial disability (TPD) refers to the time when the injured employee is able to resume some gainful employment but has not yet reached maximum recovery. *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *3 (Tenn. Workers' Comp. Panel Nov. 15, 2005). As with TTD, there must be adequate proof of a causal connection between the injury and the disability for an award of TPD.

Dana contends Mr. Wilson is not entitled to any temporary disability benefits for which he may qualify in this case because of his termination for cause for violation of Dana's attendance policy.

The Court finds there is insufficient medical evidence to establish that Mr. Wilson's physicians took him off work or provided temporary work restrictions after June 4, 2015, when Mr. Wilson first gave notice to Dana of his work injury. Therefore, Mr. Wilson has not introduced sufficient evidence from which this Court can conclude that he is likely to prevail at a hearing on the merits on the issue of temporary disability benefits. In light of this finding, Dana's argument concerning Mr. Wilson's termination for cause need not be addressed at this time.

7

**IT IS, THEREFORE, ORDERED** as follows:

1. Dana or its workers' compensation carrier shall provide Mr. Wilson with medical treatment for his bilateral carpal tunnel injury as required by Tennessee Code Annotated section 50-6-204 (2014), to be initiated by Dana or its workers' compensation carrier providing Mr. Wilson with a panel of physicians as required by statute. Medical bills shall be furnished to Dana or its workers' compensation carrier by Mr. Wilson or the medical providers.

2. Mr. Wilson's claim for payment of past medical bills and mileage is denied.

3. Mr. Wilson's claim for temporary disability benefits is denied at this time.

4. This matter is set for an Initial (Scheduling) Hearing on March 3, 2016, at 10 a.m.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 16th day of December, 2015.**

_____
**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Luttrell, Court of Workers' Compensation Claims. You must call 901-543-2668 or toll-free at 855-543-5046 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without**

8

**your further participation.**

<u>Right to Appeal:</u>

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of

9

the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Bradley Wilson
2. Affidavit of Dr. Ken Berry
3. Affidavits of Dana employees:
    a. Jason Almand
    b. Keith Henegar
    c. Dale Jeansonne
    d. Brian Ward
    e. Andrea Gooch
4. Medical records of the following:
    a. Dr. Ken Berry
    b. Henry County Medical Center
    c. Dr. Ronald Bingham
    d. Dr. Blake Chandler
5. Medical bills
6. Notice of Denial of Claim
7. Mr. Wilson's notice of work injury
8. Wage Statement
9. Mileage Reimbursement Form
10. Dr. Chandler's causation opinion
11. Careworks Absence Management FMLA letters


Technical record:[3]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the __16th__ day of December, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------------|---------|-----------|------------------|
| Bradley Wilson, Employee | X | | X | 935 Chalk Hill Church Rd. Camden, Tennessee 38320 Bwoldschool65@yahoo.com |
| Terri Bernal, Esq. Employer's Counsel | | | X | tbernal@wimberlylawson.com; jgreen@wimberlylawson.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**