IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 7, 2005 Session


# RAYMOND BANKS v. UNITED PARCEL SERVICE, INC.


**Appeal by Permission from the Special Workers' Compensation Appeals Panel
Circuit Court for Moore County
No. 709      William Lee Russell, Judge**

---

**No. M2003-01875-SC-WCM-CV - Filed August 18, 2005**

---


We granted review in this workers' compensation case to determine whether the trial court erred in awarding benefits to the injured employee for the period prior to the date the employee notified the employer of his gradually-occurring injury. The Special Workers' Compensation Appeals Panel held that the trial court correctly determined that the employee had timely notified the employer of his injury, but reversed the trial court's determination that the injury was compensable prior to the date of notification. After reviewing the record and applicable authority, we affirm in part and reverse in part the decision of the Special Workers' Compensation Appeals Panel. We hold that the notice was timely, that the employee is entitled to temporary total disability benefits for the period he was off work following his surgery, and that the trial court correctly determined that the employee sustained a 70% vocational disability, affirming the trial court on the separate grounds set forth herein.


**Tenn. Code Ann. § 50-6-225(e); Findings of Fact and Conclusions of Law of the Special
Workers' Compensation Appeals Panel Affirmed in Part and Reversed in Part**


E. RILEY ANDERSON, J., delivered the opinion of the court, in which ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined. FRANK F. DROWOTA, III, C.J., not participating.


David T. Hooper, Brentwood, Tennessee, for the Appellant, United Parcel Service, Inc.

Timothy S. Priest, Winchester, Tennessee, for the Appellee, Raymond Banks.

# OPINION

## Background

The record developed before the trial court contains the following facts.

Plaintiff Raymond Banks ("Banks") was employed with defendant United Parcel Service ("UPS") for thirty years. Banks retired from UPS in March 2002 after the knee injury which is the subject of this claim rendered him unable to meet the physical requirements of his job. Banks had completed high school and one quarter of college and was sixty years old at the time of trial on July 2, 2003.

The majority of Banks' career, including the period from 1997 to 2001, was spent as a "package car driver," making deliveries to residences and businesses in Moore County and Lincoln County, Tennessee. Banks testified that the package car driver position required him to make between fifty and sixty deliveries per day and lift between 120 and 200 packages per day, many of which weighed more than fifty pounds. He testified that the job required him to be on his feet "[a]ll the time" and required him to climb steps and occasionally kneel to retrieve packages. From 1993 to 1997, Banks had worked as a "feeder driver," driving eighteen-wheeler trucks. Both positions require drivers to lift seventy pounds alone and 150 pounds with assistance.

Mr. Banks first noticed stiffness and soreness in his left knee in 1991. He did not think at the time that his knee pain was work-related because there had been no specific knee incident at work. He was initially treated by an orthopedic surgeon, Dr. Robert Russell, with medication and cortisone shots; on December 27, 1991, however, Banks underwent an arthroscopic procedure that revealed a torn medial meniscus and chondromalacia, an early arthritic change in his left knee. Banks continued to have pain in his knee over the next several years.

Orthopedic surgeon Dr. Allen F. Anderson testified by deposition that he first treated Banks for knee problems on September 3, 1993. He next saw Banks on June 11, 1998, when Banks complained that he could not bend his knee, stand, or walk without pain. Dr. Anderson treated Banks with medication, cortisone shots, and braces, but Banks' knee condition deteriorated over the next two and a half years. Dr. Anderson advised Banks in April 2001 that Banks needed knee replacement surgery. Banks elected to postpone the surgery as long as possible, because he knew that he would not be able to perform the physical requirements of his job after the surgery. Finally, when the pain became "excruciating" to Banks, he scheduled knee replacement surgery with Dr. Anderson for November 5, 2001.

Following surgery, Banks was off work from November 5, 2001, until March 3, 2002, when Dr. Anderson released him to work. Banks was restricted from lifting over fifty pounds as well as from kneeling, crawling, or sitting for more than three hours. Because he could not perform his previous jobs at UPS under the physical restrictions, he took retired status as of March 4, 2002.

Dr. Anderson testified that throughout his treatment of Banks up until the time of surgery, Banks never mentioned that his injury was work-related; Banks likewise testified that he had never discussed with Dr. Anderson whether the injury was work-related and that Dr. Anderson had never opined that it was. Although Banks and his wife testified that Dr. Anderson mentioned that Banks' work did not help matters, Banks testified that he did not believe he had a workers' compensation claim because he was not injured in a particular incident on the job.

Wayne Scales, Banks' supervisor at UPS, testified that he had assumed Banks' knee injury was work-related, but apparently did not share this assumption with Banks. He testified that a few weeks prior to his surgery, however, Banks told him that one or two years earlier he had been working at home and heard a "pop" in his knee. Scales testified that after this conversation he assumed that Banks' injury was not work-related, but again did not discuss his conclusion with Banks. Banks testified that he did not recall having such a conversation with Scales. His knee had popped occasionally at work, but rather than associating it with work, Banks attributed it to his arthritis.

Banks testified that prior to his November 2001 surgery, his co-workers suggested that his injury might be work-related and advised him to consult an attorney. Banks testified that he met with his attorney, Timothy Priest, on October 17, 2001. That same day, Priest sent a letter to Dr. Anderson requesting medical records. Dr. Anderson did not respond to Priest's October 17 letter. Priest sent another letter on May 6, 2002, stating that Banks felt his employment at UPS had aggravated his knee injury. Dr. Anderson responded in writing on May 14 and stated that in his opinion Banks' employment with UPS aggravated a preexisting condition and that Banks had sustained a 37% impairment to his left leg. Banks testified that after Priest informed him of Dr. Anderson's opinion letter on May 16, 2002, Banks notified UPS that his injury was work-related on May 22, 2002.

Banks filed a complaint for workers' compensation benefits in the Circuit Court for Moore County on June 3, 2002. The case was heard on July 2, 2003. The trial court held that Banks' employment with UPS aggravated his preexisting arthritic condition and caused a progression of the condition. The court held that Banks gave UPS timely notice of his gradually-occurring injury and awarded seventeen weeks of temporary total disability benefits from the date that surgery was performed, November 5, 2001, until Banks was released with restrictions to return to work on March 3, 2002. The trial court adopted Dr. Anderson's impairment rating and held that Banks was entitled to a permanent partial disability award based on a 70% occupational impairment to his left leg.

UPS appealed to the Special Workers' Compensation Appeals Panel. The Panel affirmed the trial court's decision that the notice was timely, but reversed the trial court's decision that Banks was entitled to seventeen weeks of temporary total disability benefits because the disability leave pre-dated Banks' notification of UPS. Finally, the Panel affirmed the trial court's award of permanent partial disability based on a 70% impairment to Banks' left leg.

We accepted review.

## Analysis

Our standard of review of factual issues in a workers' compensation case is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (1999 & Supp. 2004); Whirlpool Corp. v. Nakhoneinh, 69 S.W.3d 164, 167 (Tenn. 2002). When the trial court has seen the witnesses and heard the testimony, especially where issues of credibility and the weight of testimony are involved, the appellate court must extend considerable deference to the trial court's factual findings. Whirlpool, 69 S.W.3d at 167. In reviewing documentary evidence such as depositions, however, we extend no deference to the trial court's findings. Id. Our standard of review of questions of law is de novo without a presumption of correctness. Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003).

UPS challenges the trial court's rulings that Banks' notice to UPS on May 22, 2002, was timely and that Banks is entitled to temporary total disability for the time between his surgery on November 5, 2001, and March 3, 2002, the date he returned to work. Banks challenges as inadequate the trial court's determination that he sustained a 70% permanent partial impairment. We will consider each argument in turn.

### *Notice*

UPS argues that Banks knew or reasonably should have known at several points that he had a work-related injury prior to Dr. Anderson's May 14, 2002 letter. Banks counters that because he had a preexisting condition which was gradually aggravated by his work at UPS, he did not know and could not reasonably have known that he had a work-related injury until his attorney informed him of Dr. Anderson's May 14, 2002 letter. Banks argues that because he notified UPS eight days later, on May 22, 2002, his notice was timely.

An employee who fails to notify his employer within thirty days that he has sustained a work-related injury forfeits the right to workers' compensation benefits unless the employer has actual notice of the injury or unless the employee's failure to notify the employer was reasonable. Tenn. Code Ann. § 50-6-201(a) (1999 & Supp. 2004). Tennessee Code Annotated section 50-6-201(a) provides:

> (a) Every injured employee or such injured employee's representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury, and the employee shall not be entitled to physician's fees or to any compensation which may have accrued under the provisions of the Workers' Compensation Law from the date of the accident to the

-4-

giving of such notice . . . unless reasonable excuse for failure to give such notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

In 2001, the legislature amended the statute to address gradually-occurring injuries such as the one sustained by Banks. Effective July 1, 2001, the statute further provides:

> (b) In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee or such injured employee's representative shall provide notice to the employer of the injury within thirty (30) days after the employee:
>
> (1) Knows or reasonably should know that such employee has suffered a work-related injury that has resulted in permanent physical impairment; or
>
> (2) Is rendered unable to continue to perform such employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

Tenn. Code Ann. at § 50-6-201(b) (Supp. 2004). This subsection recognizes that although by definition a gradually-occurring injury occurs over time, some date must be chosen to trigger the notice requirement. Thus, employees are relieved from the notice requirement until they know or reasonably should know that their injury was caused by their work and that the injury has either impaired them permanently or has prevented them from performing normal work activities. Id.

We have recognized in the past that an employee who sustains a gradually-occurring injury may be unsure of the cause of his or her injury, and therefore relieved of the notice requirement, until the diagnosis is confirmed by a physician. See Whirlpool, 69 S.W.3d at 169-70; Pentecost v. Anchor Wire Corp., 695 S.W.2d 183, 186 (Tenn.1985). Additionally, we must be "guided by the longstanding rule that the workers' compensation statutes are to be liberally construed and that doubt should be resolved in favor of the employee." Lollar v. Wal-Mart Stores, Inc., 767 S.W.2d 143, 148-49 (Tenn. 1989) (citing Knox v. Batson, 399 S.W.2d 765, 772 (Tenn. 1966), and Tenn. Code Ann. § 50-6-116).

Here, Banks was both prevented from performing his normal work activities and was permanently impaired as of the date of his surgery, November 5, 2001; the issue is when Banks knew or reasonably should have known that his work caused his injury. UPS argues that Banks knew or should have known that his injury was work-related by April 1, 2001, when Dr. Anderson advised him that he would need knee surgery. Alternatively, UPS argues that Banks reasonably should have known that he had a work-related injury when he consulted his attorney at the suggestion of coworkers on October 17, 2001, or when his condition finally prevented him from working on

November 5, 2001. Finally, UPS argues that Dr. Anderson's general statements to Banks that his employment was not helping his condition should have alerted him that he had a work-related injury long before Banks finally notified UPS on May 22, 2002.

Whether Banks knew or reasonably should have known that he had sustained a work-related injury prior to learning of Dr. Anderson's unequivocal statement on May 14, 2002, is a question of fact. The record shows that Banks was unsure whether his injury was work-related until his lawyer informed him of Dr. Anderson's opinion.

Banks testified, for example, that he knew that he had a preexisting condition but did not know that it was compensable until Dr. Anderson's May 14, 2002 letter. Banks was never advised that his condition was work-related; indeed, he testified that he believed it was not work-related because he had not been injured in any specific incident. Moreover, even though he did not believe that he had a compensable injury, Banks kept his supervisors apprised of his injury and treatment. The evidence does not preponderate against the trial court's factual finding that Banks did not reasonably know his condition was work-related until May 2002, and that his notice to UPS on May 22, 2002, was timely.

### *Temporary Total Disability*

UPS next argues that the trial court erred in awarding Banks seventeen weeks of temporary total disability for the time he was incapacitated due to his knee surgery, because Banks did not notify UPS that he had a work-related injury until after he had recovered from the surgery, been released with restrictions, and taken retired status. UPS argues that because Tennessee Code Annotated section 50-6-201(a) provides that an employee "shall not be entitled to physician's fees or to any compensation . . . from the date of the accident to the giving of such notice," Banks may not be compensated for any loss prior to May 22, 2002, the date he notified UPS of his injury. Banks counters that he was entitled to temporary total disability benefits even before giving notice of the injury because the exception for gradually-occurring injuries under Tennessee Code Annotated section 50-6-201(b) makes the provisions of section 50-6-201(a) inapplicable.

The purpose of the notice requirement is to give the employer "the opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for the injured employee." Jones v. Sterling Last Corp., 962 S.W.2d 469, 471 (Tenn. 1998) (citing Puckett v. N.A.P. Consumer Elec. Corp., 725 S.W.2d 674, 675 (Tenn.1987)). In other words, the notice provision serves to protect the employer from prejudice and to secure the employer's right to control the provision of treatment. Where the employee is ignorant of the work-connected nature of his injury, however, the employer's interest must yield to the remedial purpose of the statute. Cf. Long v. Mid-Tenn. Ford Truck Sales, Inc., 160 S.W.3d 504, 510 (Tenn. 2005) (awarding compensation for nursing services where injured employee understood from physician that services were required but did not obtain a written order).

On several occasions this Court has addressed questions of timing in gradually-occurring injury cases. See, e.g., Mahoney v. NationsBank of Tenn., N.A., 158 S.W.3d 340, 345 (Tenn. 2005) (determining which of two employers was liable for injury); Bone v. Saturn Corp., 148 S.W.3d 69, 73-74 (Tenn. 2004) (determining date at which compensation rate should be fixed); Lawson v. Lear Seating Corp., 944 S.W.2d 340, 341-42 (Tenn. 1997) (determining when statute of limitations begins to run). When construing statutory time limits and requirements in such cases, we have favored a construction that preserves a worker's right to benefits and have emphasized that the worker must be aware that he has sustained a work-related injury before time limits apply. See Lawson, 944 S.W.2d at 342; Brown Shoe Co. v. Reed, 350 S.W.2d 65, 70 (Tenn. 1961). This is consistent with the statutory admonition to give the Worker's Compensation Act "an equitable construction." Tenn. Code Ann. § 50-6-116 (1999).

For example, in determining when the statute of limitations begins to run, we have used the "last day worked" rule, deeming the last day before the gradually-occurring injury incapacitated the employee from working to be the date of the injury. See, e.g., Lawson, 944 S.W.2d at 342. The purpose of the last-day-worked rule "is to fix a date certain when the employee knows or should know he or she sustained a work-related injury so that workers with gradual injuries will not lose the opportunity to bring claims . . . ." Bone, 148 S.W.3d at 73 (citation omitted). By the same token, if an employee has provided the employer actual notice of a gradually-occurring injury, then the last-day-worked rule is inapplicable because "there is no question that the employee knows the work-related nature of his or her injury; thus there is no reason to use another date." Id. at 73-74.

Similarly, it would be inequitable to bar an employee from receiving disability benefits prior to the "date certain when the employee knows or should know he or she sustained a work-related injury . . . ." Id. at 73. Because we favor a construction of timing provisions that preserves a worker's right to benefits, we agree with Banks that because subsection (b) excuses an employee from the thirty-day notice requirement until he "knows or reasonably should know" that he has sustained a work-related injury, subsection (a)'s barrier to recovery should not apply. We therefore hold that because Banks was unaware that he had a work-related injury at the time of his surgery on November 5, 2001, his failure to notify UPS on or before that date does not bar him from receiving temporary total disability benefits.

### *Percentage of Impairment*

Banks argues that the trial court's award of 70% occupational disability to the left leg was inadequate in light of Banks' age, work experience, and physical condition. After considering Dr. Anderson's 37% anatomical impairment rating and medical restrictions, as well as Banks' age, education, and experience, the trial court concluded that Banks was "not totally disabled by any stretch of the imagination" and could do sedentary jobs. The evidence does not preponderate against the trial court's determination that Banks sustained a 70% impairment.

## Conclusion

After reviewing the record and applicable authority, we affirm the decision of the trial court on the separate grounds set forth above. We hold that appellee Raymond Banks timely notified UPS that he had sustained a gradually-occurring work-related injury. We further hold that Banks is entitled to temporary total disability benefits between the date of his surgery and the date he returned to work. Finally, we affirm the trial court's award of 70% permanent partial disability to Banks' left leg. Costs are taxed to appellant UPS and its surety, for which execution may issue if necessary.

_____
E. RILEY ANDERSON, JUSTICE