

**FILED**

**December 17, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 2:42 PM**



## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| **DOUGLAS A. HOLMAN** )<br>**Employee,** )<br>**v.** )<br>**CONSOLIDATED NUCLEAR** )<br>**SECURITY, LLC,** )<br>**Employer,** )<br>**And** )<br>**AIG CLAIMS, INC.** )<br>**Carrier.** )<br>) | **Docket No.: 2015-03-0059**<br><br>**State File Number: 2472-2015**<br><br>**Judge Pamela B. Johnson** |

## EXPEDITED HEARING ORDER
## DENYING TEMPORARY DISABILITY AND MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, Douglas A. Holman, pursuant to Tennessee Code Annotated section 50-6-239 (2014). The central legal issue is whether Mr. Holman sustained an injury arising primarily out of and in the course and scope of his employment with the Employer, Consolidated Nuclear Security, LLC (CNS), and if so, whether he is entitled to temporary disability and/or medical benefits. For the reasons set forth below, the Court finds that Mr. Holman failed to establish that he is likely to prevail at a hearing on the merits. Accordingly, his request for temporary disability and medical benefits are denied at this time.[1]

### History of Claim

Mr. Holman is a sixty-seven-year-old resident of Sevier County, Tennessee. CNS employed Mr. Holman as a carpenter. (T.R. 1.) With the exception of twelve years that he took a leave of absence to teach, Mr. Holman worked at the Y-12 Department of Energy facility from 1983 to the present. Mr. Holman described the work at the plant as "heavy [duty] work." He testified his work often required him to work on scaffolding and use a pulley, without a rope brake, to pull up heavy materials with one hand. His job

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

also required him to build forms, hang trim, build timber floors for tractor-trailers, and assemble and move heavy desks, file cabinets, and other office furniture. He further testified that his job required him to seek help to move any object weighing more than fifty pounds.

In 2003, Mr. Holman injured his right shoulder while building woodworking at home. He testified that he turned a wood beam over when it began to fall. He heard something snap and experienced a sharp pain in his right shoulder. He ultimately underwent a right rotator cuff tear.

In 2005, Mr. Holman hired a contractor to build a house on his property. In 2010, the contractor and his employees built a separate carpentry shop on his property. He testified that he supervised the carpentry work, but performed no heaving lifting. He admitted on cross-examination that he assisted in lifting the frame with six other individuals. (*See* Ex. 11.) He further admitted that he performed carpentry work outside the work place, but hired others to perform the heavy work. (*See also* Ex. 8.)

On January 8, 2015, Mr. Holman felt a sharp pain in his right shoulder after picking up an oak butcher-block workbench top with a co-worker. *Id.* Mr. Holman and his co-worker immediately stopped working, and he informed his supervisor of the injury. *Id.* His supervisor sent Mr. Holman to the onsite medical clinic.

At the onsite medical clinic, Mr. Holman saw Dr. Ramesh Dowray and reported, "We were assembling butcher block work benches. I picked up a 3' x 5' x 2" butcher block and felt a sharp pain kind of like an electric shock in my right shoulder." (Ex. 7 at 2.) Mr. Holman additionally reported that, approximately thirteen years prior, he underwent a right rotator cuff repair for a non-occupational injury. *Id.* Dr. Dowray diagnosed an "acute right shoulder pain extending from posterior-inferior right scapular area to the elbow sometimes to the right proximal forearm, etiology to be determined." *Id.* Dr. Dowray assigned restrictions of no use of the right arm above waist level and no lifting over five pounds right arm up to the waist as tolerated. *Id.*

CNS completed a First Report of Work Injury or Illness on January 12, 2015. (Ex. 2.) On that same day, Dr. John Sanabria of Lakeway Urgent Care evaluated Mr. Holman for "constant joint pain of the right shoulder since Thu, Jan 08, 2015." (Ex. 7 at 3.) Mr. Holman reported, "[I]t was the result of an injury, which was work related." *Id.* He further stated, "[H]e picked up a heavy butcher block counter top with a co-worker last week and felt sudden electric shock pain down his right arm." *Id.* Dr. Sanabria ordered x-rays and performed a physical exam. *Id.* Upon completion of the evaluation, Dr. Sanabria diagnosed "sprain, shoulder/upper arm, unspecified" and restricted Mr. Holman to "left-handed duty only." *Id.* Dr. Sanabria further noted, "The patient is displaying signs and symptoms of a rotator cuff injury. He has had tears in both shoulders in the past and says it feels the same." *Id.*

2

Mr. Holman underwent a right shoulder MRI with arthrogram on January 20, 2015. (Ex. 7 at 6-9.) Thereafter, CNS provided Mr. Holman a panel of physicians and he selected Dr. William Hovis on January 22, 2015. (Ex. 3.) Dr. Hovis evaluated Mr. Holman on January 26, 2015, for right shoulder complaints. (Ex. 7 at 12-18.) Mr. Holman related: "[H]e injured his right shoulder 1-8-15 while employed at Consolidated Nuclear Security Plant. He relates he was lifting a butcher-block counter top with the help of a fellow employee. He was lifting with both hands when he felt a tearing sensation in his right shoulder." *Id.* at 12. Dr. Hovis noted, "His job requires him to do repetitive heav[y] lifting." *Id.* Mr. Holman also advised Dr. Hovis:

> [H]e previously injured his right shoulder in 2003 which was not work related. He underwent a rotator cuff repair . . . He relates he had done well with his right shoulder until his recent injury. . .
>
> He is S/P rotator cuff repair left shoulder by WMH in 2011. He relates his left shoulder is doing "great."
>
> He relates "you operated on my left shoulder and it is perfect, I want you to fix my right shoulder." He further relates that he does carpentry work. He loves what he does. He is compassionated [sic] about what he does and he relates that "I want to get 20 more years out of my arms."

*Id.* Following review of right shoulder and neck x-rays and the right shoulder MRI with arthrogram, Dr. Hovis stated:

> I have advised this gentleman of the following:
> 1. He has a chronic massive full thickness tear of the rotator cuff with retraction and atrophy to the level of the glenoid.
> 2. He has chronic rupture and/or dislocation biceps tendon long head.
> 3. It is my impression that the vast majority of orthopaedic surgeons/ shoulder specialist would deem his cuff irreparable.
> 4. The standard accepted treatment would be a reverse total shoulder arthroplasty.
> 5. A reverse total shoulder arthroplasty would be attendant with me with significant to marked restriction of physical abilities and physical activities of the right upper extremity to prevent reinjury or complications from the shoulder arthroplasty.
> 6. Some of his upper extremity symptomatology may very well originate from his neck in view of the fact that he has significant to severe neck pathology also.
>
> This gentleman is essentially pleading with me to attempt repair of his

3

rotator cuff. He is anxious to avoid shoulder arthroplasty if possible. He relates that he "loves my woodworking and I want to try to continue it as long as I possibly can. Further, you did a great job on my left shoulder and I have no difficulty with my left shoulder at all."

I have further advised him I would be happy for him to obtain a second opinion elsewhere. He basically is declining[,] requesting that I care for him and that I attempt a repair of his rotator cuff.

*Id.* at 16. Dr. Hovis agreed that it was reasonable to attempt an arthroscopy of his right shoulder. *Id.* Dr. Hovis restricted Mr. Holman to light duty. *Id.*

On January 27, 2015, CNS' carrier submitted a questionnaire to Dr. Hovis requesting a causation opinion. (Ex. 7 at 21.) On January 29, 2015, Dr. Hovis responded to the questionnaire in part as follows:

Question:   Please provide your opinion on whether there is any pre existing condition that is contributed to his current injury/

Answer:   It has been clearly stated in my medical evaluation of Mr. Douglas Holman that he has significant pre-existing conditions which do and could contribute to his current shoulder symptomatology. They were outlined in my report as follows:

He has a chronic massive full thickness tear of the rotator cuff with retraction and atrophy to the level of the glenoid. He has a chronic rupture and/or dislocation biceps tendon long head. He has degenerative arthritis to a mild degree in the acromioclavciular [sic] joint of his shoulder. He has the congenital cervical fusion with some significant arthritic change in his neck which may contribute some symptomatology to his affect right upper extremity.

Question:   Are you able to provide whether the MRI results are due to the work injury on 1-8-2015 or whether there were any conditions/tears pre existing the date of the injury?

Answer:   The majority of the findings discussed in the above diagnoses and in my report are clearly pre existing. The statement that he has a chronic massive full thickness tear of the rotator cuff with retraction and atrophy at the level of the glenoid is consistent with a chronic massive tear of the rotator cuff

4

which pre existed his described work related injury. He has a chronic rupture and/or dislocation biceps tendon long head. The appearance of this would suggest that this finding preceded his described work related injury. Degenerative arthritis acromioclavicular joint of the shoulder – although not a major component of this gentleman's symptomatology pre-existed his described work related injury.

Thus it can be stated with reasonable certainty that the majority of his MRI findings preceded his described work related injury. However, that having been said, based upon his symptomatology and his history, it is reasonable to assume that he aggravated and accentuated the chronic tear of his rotator cuff with possible additional tearing of the cuff tissue.

Question:     What comorbidities are you referring to?

Answer:     The same as outlined in the first two questions.

His age, and his being right handed, could also be considered pre existing comorbidities.

Question:     Is the current medical treatment the injured worker needs due to the work injury of 1-8-2015 or due to a pre-existing condition and/or injury?

Answer:     It is due to both. It would be reasonable to assume, however, that the majority of his findings pre existed his most recent described work related injury.

The fact that this gentleman has had prior surgery on his right shoulder elsewhere [sic] 2003 would also be reasonably considered a pre existing condition.

*Id.* at 22-24.

CNS stopped Mr. Holman's workers' compensation benefits and issued a Notice of Controversy, Form C-27, on March 4, 2015, on the basis the "right shoulder surgery is not authorized as the need for surgery is due to pre-existing condition." (Ex. 5.) CNS issued a Notice of Denial of Claim for Compensation, Form C-23, on March 19, 2015, on the same basis. (Ex. 6.)

5

Mr. Holman returned to see Dr. Hovis on March 11, 2015, "requesting a discussion regarding his shoulder difficulties, shoulder injury and again discussing treatment options as well as attempting to evaluate who the 'responsible party' will be." (Ex. 7 at 25-28.) Dr. Hovis discussed the nature of the findings and treatment options with Mr. Holman. Dr. Hovis noted in part:

> He specifically denies any heavy repetitive activities with his arms on a routine basis outside the course of his employment[.]

> He is questioning whether a portion of his pre existing condition in his right shoulder is the result of heavy repetitive work with his right arm over the years in the course of his employment.

> Assuming his history to be true, I feel it is reasonable to assume that a significant portion of his progressive wear and tear changes in his right shoulder are due to pre existing conditions associated with his work activities such as a "cumulative trauma disorder."

*Id.* at 27.

CNS' carrier contacted Dr. Hovis again, requesting further clarification on the issue of causation. The carrier posed the following question:

> Taking into consideration the employee's previous right shoulder surgery, his work as a union trainer until 2009, the degenerative changes caused by the normal aging process, and the employee's non-work related carpentry activities, are you able to state within a reasonable degree of medical certainty that it is more likely than not that the employee's work at Y-12 contributed more than 50% in causing the injury to his right shoulder?

(Ex. 9.)

Dr. Hovis responded by letter dated April 9, 2015. (Ex. 7 at 29.) Dr. Hovis stated:

> It was my impression from my discussions with him as well as review of the available medical records that he never felt he achieved a really excellent result following his initial right shoulder surgery in 2004. In addition, there appeared to be other factors at play in so much as he related that he has been building his own home with the help of others and has done other work at other companies in the past. Given the lack of available information regarding the real objective status of his shoulder following the 2004 injury as well as the other activities that he engaged in, I do not feel that I (or anyone else) can state within a reasonable degree of medical

6

certainty that a majority of this gentleman's current right shoulder difficulties are the result of his most recent period of work at Y12.

*Id.*

Subsequently, Mr. Holman came under the care of Dr. Brady.[2] Dr. Brady performed a right rotator cuff repair on August 11, 2015. Post-operatively, Mr. Holman completed physical therapy.

Mr. Holman worked from the date of the January 8, 2015 work incident until July 2015. He missed work beginning in July 2015, for unrelated personal medical reasons and received short-term disability.

Mr. Holman filed a Petition for Benefit Determination seeking temporary disability and medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Mr. Holman filed a Request for Expedited Hearing, and this Court heard the matter on November 18, 2015.

At the Expedited Hearing, Mr. Holman argued that he sustained an injury to his right shoulder as a result of the heavy labor he performed in the course of his employment with CNS. Mr. Holman argued that Dr. Hovis' causation opinion was not accurate because Mr. Holman did not build his house or carpentry shop, but only supervised. Further, Mr. Holman asserted that Dr. Hovis contradicted himself because his records first note that Mr. Holman's prior shoulder surgeries were successful, but later noted that he never achieved an excellent result. Mr. Holman contends that both prior shoulder surgeries achieved excellent results. Mr. Holman contended that he is entitled to temporary disability and medical benefits.

CNS countered that Mr. Holman failed to meet the definition of compensable injury under the Workers' Compensation Laws for the State of Tennessee. Whether a cumulative injury or acute injury, Mr. Holman failed to establish that his right shoulder injury arose primarily out of and in the course and scope of his employment with CNS. Dr. Hovis' April 9, 2015 letter clearly indicated that Mr. Holman's employment at CNS was not the primary cause of his right shoulder injury.

---

[2] The medical records of Dr. Brady were not introduced into evidence at the Expedited Hearing.

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

Tennessee Code Annotated section 50-6-102(13) (2014) defines "injury" and "personal injury" to mean an injury by accident "arising primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(13). An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B).

The Tennessee Supreme Court has consistently held that to qualify as a compensable workers' compensation claim, an injury must both "arise out of" and occur "in the course of" employment:

> The phrase "in the course of" refers to time, place, and circumstances, and "arising out of" refers to cause or origin. "[A]n injury by accident to an employee is in the course of employment if it occurred while he was performing a duty he was employed to do; and it is an injury arising out of employment if caused by a hazard incident to such employment." Generally, an injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment.

*Scarbrough v. Right Way Recycling LLC,* No. 2014-03-0006, 2015 TN Wrk. Comp. App. Bd. LEXIS 9, at *10 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2015) (internal citations omitted).

8

Pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) (2014), an employee is given the opportunity to select "the treating physician" from the employer's designated panel of "physicians, surgeons, chiropractors or specialty practice groups." Tennessee Code Annotated section 50-6-102(13)(E) (2014) expressly states that "the opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Neither of these provisions preconditions the "treating physician" designation, or the application of the presumption of correctness, on a court's perception of whether the treatment provided at any given medical appointment was appropriate or adequate.

Tennessee courts have long held that the employer in a workers' compensation case generally has the right to control medical treatment, assuming that the employer has complied with the requirements of Tennessee Code Annotated section 50-6-204 (2014). *See, e.g., Banks v. UPS, Inc.*, 170 S.W.3d 556, 562 (Tenn. 2005). Once an employer offers the employee a panel of physicians in accordance with the statute, then the selected physician is designated the "treating physician," and that physician's opinion on causation is entitled to a rebuttable presumption of correctness. Tenn. Code Ann. § 50-6-102(13)(E) (2014). The assessment by a court of the appropriateness of medical treatment offered at a medical appointment with an authorized treating physician adds a purely subjective element to the analysis that finds no support in the language of the statute. *Scott*, 2015 Tn. Wrk. Comp. App. Bd. 24 at *6-8. Judges are not well-suited to second-guess a medical expert's treatment, recommendations, and/or diagnoses absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record. *Id.*

Here, Mr. Holman timely reported the January 8, 2015 work incident. CNS provided authorized medical treatment with Dr. Hovis, whom Mr. Holman selected from a panel. Under the law, Dr. Hovis' opinion on causation is entitled to a rebuttable presumption of correctness. Mr. Holman offered no other medical evidence to rebut the causation opinion of Dr. Hovis. While Mr. Holman subsequently came under the care of Dr. Brady, who performed the right rotator cuff repair, Mr. Holman did not introduce the medical records of Dr. Brady and Dr. Brady was not apparently asked to address causation in this case. Therefore, as a matter of law, this Court finds that Mr. Holman failed to establish that he is likely to prevail at a hearing on the merits. Accordingly, his request for temporary disability and medical benefits are denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Holman's claim against Consolidated Nuclear Security, LLC and its workers' compensation carrier for the requested temporary disability and medical benefits is denied at this time.

2. This matter is set for an Initial (Scheduling) Hearing on **Tuesday, February 9, 2015, at 9:30 a.m. eastern time**.

**ENTERED this the 17th day of December, 2015.**

_Pamela B. Johnson_

**JUDGE PAMELA B. JOHNSON**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with Judge Pamela B. Johnson in the Court of Workers' Compensation Claims. You must call (865) 594-0091 or toll-free at 855-543-5041 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying

the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

11

## APPENDIX

Technical Record:[3]
- Petition for Benefit Determination, filed March 3, 2015;
- Dispute Certification Notice, filed March 31, 2015; and
- Request for Expedited Hearing, filed May 26, 2015.

Exhibits:
- EXHIBIT 1: Affidavit of Douglas Holman;
- EXHIBIT 2: First Report of Work Injury, Form C20;
- EXHIBIT 3: Panel of Physicians, Form C42;
- EXHIBIT 4: Wage Statement, Form C41;
- EXHIBIT 5: Notice of Controversy, Form C27;
- EXHIBIT 6: Notice of Denial of Claim for Compensation, Form C23;
- EXHIBIT 7: Collective Exhibit, numbered pages 1-29;
- EXHIBIT 8: Statement of Harold North;
- EXHIBIT 9: Letter from Attorney Stogsdill to Dr. William Hovis;
- EXHIBIT 10: Injury/ Illness Data Collection; and
- EXHIBIT 11: Photographs.

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 17th day of December, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Douglas A. Holman, Employee | X | | X | Douglas A. Holman<br>1616 River Bend Road<br>Sevierville, TN 37876<br>ubcdah@oal.com |
| Landon Lackey, Esq., Employer's Counsel | | | X | Landon.Lackey@cns.doe.gov |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**