

FILED

June 1, 2017

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time 4:08 PM

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| ROSA CARNEY, | ) | Docket No. 2016-07-0875 |
| Employee, | ) | |
| v. | ) | |
| SOUTHWEST HUMAN RESOURCE | ) | State File No. 91986-2016 |
| AGENCY, | ) | |
| Employer, | ) | |
| And | ) | Judge Amber E. Luttrell |
| TML RISK MANAGEMENT POOL, | ) | |
| Insurance Carrier. | ) | |

## EXPEDITED HEARING ORDER
## GRANTING CERTAIN MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on May 4, 2017, upon the Request for Expedited Hearing filed by Rosa Carney. The present focus of this case is whether Ms. Carney came forward with sufficient evidence demonstrating she is likely to prevail at a hearing on the merits that she is entitled to medical benefits for her alleged injuries to her left wrist and shoulder. The Court holds she did not come forward with sufficient evidence, at this stage of the proceedings, to show she would likely prevail regarding entitlement to medical benefits for the left shoulder. However, the Court finds she did do so regarding the left wrist and holds she is entitled to a panel of physicians for the left wrist injury.

### History of Claim

Ms. Carney worked for Southwest Human Resource Agency as a cook in a Head Start center in Stanton, Tennessee. Her job duties involved preparing breakfast and lunch for students, cleaning the kitchen, unloading coolers of food and cases of juice, and lifting garbage bags to take out trash. In her Petition for Benefit Determination (PBD), Ms. Carney alleged a carpal tunnel injury to her left wrist and a left shoulder injury arising out of her work duties on October 3, 2016. Southwest denied her claim citing "no medical evidence of a work related injury." However, at the hearing, Southwest primarily

1

defended the claim based on lack of proper notice. The hearing testimony and evidence established the following facts.

Ms. Carney had a prior work-related carpal tunnel injury to her right wrist, which Southwest accepted as a compensable claim. Dr. John Masterson provided the authorized treatment. According to Ms. Carney, she had symptoms in both hands when she began treating with Dr. Masterson; however, he elected to treat her right wrist first since it was worse than the left. She testified that Susan Reed, her nurse case manager, attended her appointments and was aware of her left wrist symptoms. Ms. Carney stated Dr. Masterson released her from her right wrist treatment to return to work on September 1, 2016.

After returning to work, Ms. Carney experienced pain and swelling in her left wrist. She testified that her problems worsened when Southwest temporarily relocated her to the Brownsville job site where she performed more mopping and lifting. After working at Brownsville for one month, Ms. Carney returned to the Stanton jobsite.

Ms. Carney testified she notified her supervisor, Glenda Jewell, of the pain and swelling in her left wrist in October 2016 when Ms. Jewell visited her job site. She stated she showed Ms. Jewell her swollen wrist and wrist brace, but Ms. Jewell did not respond. Ms. Jewell testified she visited the Stanton location on October 5, 2016, and "probably would have seen Ms. Carney at the visit." However, she denied any discussion with Ms. Carney about an injury to her left wrist, and could not recall if Ms. Carney showed her the wrist brace or swelling.

As for the left shoulder, Ms. Carney testified her symptoms began in November 2016, when she was mopping the kitchen floor and felt sharp pain in her left shoulder. Ms. Carney stated she called Ms. Jewell and told her she needed a doctor's appointment, but proceeded on to her primary care provider, Melanie Gilliland, Family Nurse Practitioner (FNP), and Dr. John Janovich. Ms. Jewell denied Ms. Carney reported any work injury to her in the fall of 2016. On cross-examination, Ms. Carney acknowledged she did not seek approval from Southwest before seeing Dr. Janovich or FNP Gilliland. On November 15, FNP Gilliland took her off work pending surgery for her left shoulder as well as the left wrist.

*Notice*

Concerning the notice defense raise by Southwest, Ms. Carney testified Southwest gave her the "runaround" when she attempted to report her work injury. According to Ms. Carney, she called Renee Maness, Human Resources Assistant, and asked to file a workers' compensation claim because she "started hurting real bad." Since she already had a claim for her right wrist, Ms. Maness instructed her to call Ms. Reed, the nurse case manager on the right arm claim. Ms. Reed told Ms. Carney she would need to set up a

new claim for the left arm. Someone subsequently referred Ms. Carney to Jacqueline Bingham, Southwest's Administrative Specialist in the central office. Ms. Bingham expressed confusion regarding why someone referred Ms. Carney to her since she works in payroll and does not file workers' compensation claims. Ms. Carney next spoke to Michelle Vickery, Southwest's claims adjuster, who asked her "Why haven't you already filed the claim?" Ms. Carney later spoke to Ms. Bingham again who assisted her and prepared the First Report of Work Injury.

Ms. Carney testified Southwest kept asking her "when did the incident happen?" She stated her carpal tunnel syndrome did not happen "all at once." She maintained it happened gradually over time. Ms. Carney did not testify to the significance of the October 3, 2016 date she reported to Southwest other than to say, "That's when I started back in pain."

After Southwest filed the First Report of Injury, it obtained signed medical authorizations from Ms. Carney, took her recorded statement, and subsequently denied the claim on December 14. (Ex. 2.) Southwest never offered Ms. Carney a panel of physicians.

For its defense, Southwest offered the testimony of Glenda Jewell (Supervisor), Jacqueline Bingham (Administrative Specialist), and Renee Maness (HR Assistant). The details of their testimony concerning notice differ somewhat from Ms. Carney's testimony.

Ms. Jewell testified it is Southwest policy for employees to immediately report work-related injuries to their supervisor. Ms. Jewell denied Ms. Carney reported a work-injury to her left arm to her in the fall of 2016. Ms. Jewell personally visited Ms. Carney's Stanton location a few times per year; however, she stated all employees had her cell number and could call her to report an injury. Ms. Jewell stated she learned of Ms. Carney's left arm carpal tunnel syndrome from Ms. Bingham.

Ms. Bingham testified she first learned of Ms. Carney's problems with her left arm on November 15, when she received a faxed off-work note from FNP Gilliland stating, "Ms. Carney is unable to lift with her left arm. She will be off work pending surgery to repair her left hand and left shoulder." (Ex. 5.) Ms. Bingham shared the note with Ms. Jewell and Ms. Maness, and called Ms. Carney to ask "what was going on?" She stated nothing in FNP Gilliland's note indicated Ms. Carney had a work-related condition; therefore, Ms. Bingham called Ms. Carney to inquire if she needed FMLA paperwork. Ms. Bingham spoke to Ms. Carney and mailed her FMLA paperwork on November 16. She stated Ms. Carney called her again on November 16, and advised Ms. Bingham her condition was work-related. Thinking her condition may be related to her right arm claim, Ms. Bingham referred Ms. Carney to Ms. Reed. Ms. Carney called Ms. Bingham again on November 23, and advised that Ms. Reed suggested she file a new claim on her

3

left arm.

Following this conversation, Ms. Bingham prepared a First Report of Work Injury and mailed to Ms. Carney a Southwest Incident Report to complete. Once Ms. Bingham received the completed incident report, she noticed Ms. Carney left the injury date box blank. Ms. Bingham called her, requested she submit an injury date, and Ms. Carney told her October 3, 2016. Ms. Bingham forwarded the forms to Ms. Maness on November 28, and Ms. Maness filed them with Southwest's workers' compensation insurance carrier.

On cross examination, Ms. Bingham testified she recalled Ms. Carney visiting the central office while treating for her right wrist to drop off work notes. She acknowledged Ms. Carney "might have" told her in one of those conversations that she also had problems with her left hand, but Dr. Masterson elected to do her right hand first.

Ms. Maness testified she is responsible for filing all first reports of injury with Southwest's insurance carrier and setting up first doctor's appointments for employees with work-related injuries. Ms. Maness stated she first learned that Ms. Carney alleged a work-related left-arm injury on November 23, when Ms. Carney called her and reported a work injury. Ms. Maness asked if she reported it to Ms. Jewell, and Ms. Carney acknowledged she did not. Rather, Ms. Carney advised she spoke to Ms. Bingham. Ms. Maness testified she instructed Ms. Carney to contact Ms. Jewell, pursuant to Southwest's policy.

*Medical Treatment*

Concerning Ms. Carney's medical treatment, the parties offered medical records into evidence, which indicated she saw Dr. Masterson concerning her left wrist symptoms on September 1, 2016. Southwest did not authorize this appointment. Dr. Masterson noted,

> Pt reports insidious onset of L sided palmar wrist pain and discomfort, which began about a month ago . . . She feels this may be because she was overusing the left side as she was recovering from her R CT release from her work injury. Pt not reporting trauma to L wrist. She has had some paresthesias into the L wrist and hand.

Ms. Carney also complained of left shoulder pain. Dr. Masterson noted, "Pt presents with pain and decreased ROM on L side. Symptoms have been chronic non-traumatic. Symptoms occur constantly w/intermittent worsening. She reports insidious onset of L shoulder pain and discomfort beginning about 4 weeks ago." Dr. Masterson diagnosed left carpal tunnel syndrome and shoulder impingement syndrome with possible adhesive capsulitis. He injected Ms. Carney's shoulder, ordered shoulder PT, and referred her for a nerve conduction study. (Ex. 8.)

4

Ms. Carney next saw Dr. Janovich for her left shoulder and left wrist complaints in October 2016. Dr. Janovich diagnosed impingement syndrome of the shoulder and cubital tunnel in the wrist. He ordered a shoulder MRI and NCS of the wrist. On November 10, Dr. Janovich reviewed the test results and concluded the MRI was consistent with impingement syndrome and the NCS confirmed carpal tunnel syndrome. He recommended Ms. Carney undergo surgical release. He stated, "She is going to check with her employer before she schedules surgical intervention." (Ex. 11.)

Ms. Carney continued treating for her left shoulder, left wrist, and other issues with FNP Gilliland. The Court notes discrepancies in FNP Gilliland's records from December 7 and December 8, where it appears "right" arm and "left" arm were interchanged throughout the records and the date of onset varies among the different records. The Court further notes FNP Gilliland prepared multiple records for the same dates of service. FNP Gilliland's only record that referenced a history of a work event was a December 7 record, which indicated Ms. Carney reported "left shoulder pain" with an onset two years prior that occurred while lifting at work. However, the assessment section stated "pain in right shoulder." FNP Gilliland noted in January 2017, that Dr. Janovich recommended surgery for Ms. Carney's left wrist and shoulder; however, Ms. Carney awaited a decision concerning whether the surgeries would be covered by workers' compensation. (Ex. 9.)

At the hearing, Ms. Carney asserted her job duties at Southwest caused her injuries to her left wrist and shoulder and contended she gave proper notice of her injuries. She requested medical treatment, including Dr. Janovich's recommended surgeries, for her left wrist and shoulder.

Southwest countered that Ms. Carney is not entitled to the requested benefits based on her failure to give proper notice of an injury and lack of medical evidence supporting her claim.

**Findings of Fact and Conclusions of Law**

Because this case is in a posture of an Expedited Hearing, Ms. Carney need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. Instead, she must come forward with sufficient evidence from which this court might determine she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2016).

5

*Notice*

Southwest contended Ms. Carney failed to give proper notice of her alleged injury to her left wrist and left shoulder. Based upon the proof in this case, the Court finds it appropriate to address notice as to the left shoulder injury and the left wrist injury separately.

*a. Left Shoulder*

Ms. Carney alleged feeling a sharp pain in her left shoulder while mopping the kitchen floor of the Head Start center. In such cases of a specific and acute injury, Tennessee law requires every injured employee to "immediately upon the occurrence of an injury, or as soon thereafter as reasonable and practicable," to provide written notice of an injury to an employer who does not have actual notice. If the employee fails to do so within fifteen (15) days, "no compensation shall be payable." The notice must "state in plain and simple language . . . the time, place, nature, and cause of the accident resulting in injury. Tenn. Code Ann. §50-6-201(a)(2016). Our Appeals Board explains the reason for the notice requirement as follows:

> The notice requirement contained in section 50-6-201 exists so that an employer will have an opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for an injured employee. Consequently, the giving of statutory notice to the employer is an absolute prerequisite to the right of an employee to recover compensation under the workers' compensation law. When lack of notice is raised as a defense, the burden is on the employee to show that notice was given, the employer had actual notice, or the failure to give notice was reasonable under the circumstances.

*Hosford v. Red Rover Preschool*, 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *15 (Oct. 2, 2014)

Guided by this authority, the Court finds Ms. Carney did not come forward with sufficient proof to establish that she provided proper notice of a left-shoulder injury. In so finding, the Court first notes Ms. Carney gave inconsistent dates regarding when she injured her shoulder. The First Report of Injury and PBD lists October 3, 2016 as the date of injury and Ms. Carney's affidavit and statements in the Southwest Incident Report appear consistent with an October date of injury. However, Ms. Carney testified her shoulder injury occurred "sometime in November 2016," and the history she gave to Dr. Masterson was of a chronic, non-traumatic shoulder condition that began four weeks prior to the September 1 visit. Moreover, FNP Gilliland's December 7 record indicated Ms. Carney's left shoulder symptoms began two years prior.

6

Despite these conflicting accounts, Ms. Carney testified she called Ms. Jewell after she experienced shoulder pain from mopping to advise her she needed to go to the doctor, but she did not testify she told Ms. Jewell her shoulder pain resulted from a work-related injury. Rather, she simply told her she needed to see a doctor, and then sought unauthorized treatment from Dr. Janovich and FNP Gilliland. For her part, Ms. Jewell denied any report of a work injury from Ms. Carney in the fall of 2016. The Court finds, aside from the above testimony, the remainder of Ms. Carney's hearing testimony focused on her carpal tunnel syndrome.

In Ms. Carney's limited testimony concerning her left shoulder, the Court holds she did not satisfy her burden of proving notice or showing a reasonable excuse for failure to give proper notice. Thus, the Court holds Ms. Carney did not come forward with sufficient evidence at this time to prove she is likely to succeed at a hearing on the merits regarding notice of the left shoulder injury.

### b. Left Wrist

The next consideration is whether Ms. Carney provided proper notice of a carpal tunnel injury to her left wrist. The Court finds she did.

Ms. Carney credibly testified at the hearing that she had trouble providing a specific injury date because her left wrist carpal tunnel syndrome "did not happen all at once." She testified it progressed over time. Tennessee Code Annotated 50-6-201(b) (2016) provides in gradual-injury cases that the injured employee must provide notice to the employer fifteen days after the employee:

(1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or

(2) Is rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

Thus, in gradually-occurring injuries, employees are relieved from the notice requirement until they know or reasonably should know that their work caused their injury or that the injury either impaired them permanently or prevented them from performing normal work activities. *Banks v. United Parcel Serv., Inc.*, 170 S.W.3d 556, 561 (Tenn. 2005).

The Court recognizes Southwest maintained Ms. Carney did not follow the proper company procedure by first formally notifying Ms. Jewell. However, based on the testimony of Ms. Carney and Ms. Bingham, the Court finds Ms. Carney provided sufficient notice to Southwest of a work-related injury to her left wrist as early as

7

November 16, when she called Ms. Bingham and notified her that she believed her injury was work-related. Ms. Bingham testified she then relayed that information to *both* Ms. Jewell and Ms. Maness. Based on Ms. Maness' testimony, the Court finds Ms. Carney provided notice to her, at the latest, on November 23. It was undisputed that Ms. Carney was unable to continue her normal work activities on November 15, 2016, when FNP Gilliland took her off work pending surgery. Consequently, the Court finds Ms. Carney gave adequate notice of a left wrist injury to Southwest within fifteen days of her last day worked.

Therefore, as a matter of law, Ms. Carney came forward with sufficient evidence from which this Court concludes she is likely to prevail at a hearing on the merits on the issue of notice of a left wrist injury.

*Causation*

Southwest next asserted Ms. Carney failed to produce sufficient evidence to show she is likely to prevail on the issue of causation regarding her alleged work-related injuries. In order to establish causation, Ms. Carney must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Thus, causation must be established by expert medical testimony. *See* Tenn. Code Ann. § 50-6-102(14) (2016).

In this instance, Southwest argued, and the Court agrees, that Ms. Carney did not produce any expert medical evidence linking her left carpal tunnel syndrome to her employment activities with Southwest. As a result, Ms. Carney offered insufficient evidence to establish she is likely to prevail on the issue of compensability.

However, Ms. Carney does not have to prove compensability to establish Southwest's obligation to provide a panel of physicians from which she may choose an authorized physician. *McCord, supra,* at *16-17. In *McCord*, the Workers' Compensation Appeals Board found that:

> [W]hether the alleged work accident resulted in a compensable injury has yet to be determined. Therefore, while Employee has not proven by a preponderance of the evidence that she suffered an injury arising primarily out of and in the course and scope of employment, she has satisfied her *burden at this interlocutory stage* to support an Order compelling Employer to provide a panel of physicians.

*Id.* at *17 (emphasis added). Thus, the question becomes whether Ms. Carney has

8

provided sufficient evidence to satisfy her "burden at this interlocutory stage" that she is entitled to a panel of physicians. The Court finds Ms. Carney credibly testified concerning the pain and swelling in her left wrist that she associated with her work in the kitchen at Southwest. As previously stated, Ms. Carney also provided adequate notice of her alleged gradually occurring injury to her wrist. She complied with Southwest's investigation of her claim, provided a signed medical authorization and recorded statement. The medical records indicated Ms. Carney declined unauthorized surgery while awaiting Southwest's decision regarding whether it would provide medical benefits. In light of these facts and the totality of the evidence, the Court finds Ms. Carney provided sufficient evidence to satisfy her "burden at this interlocutory stage" that she is entitled to a panel of physicians. As a result, Southwest is ordered to provide a panel of orthopedic physicians within Ms. Carney's community from which Ms. Carney may choose an authorized physician for evaluation, and if necessary, treatment of her left wrist carpal tunnel syndrome in accordance with Tennessee Code Annotated section 50-6-204(a)(1)(A) (2016).

*Temporary disability benefits*

Finally, the Court notes the parties designated temporary disability benefits as a disputed issued in the Dispute Certification Notice. Because Ms. Carney has not demonstrated she is likely to prevail at a hearing on the merits on the issue of causation, the Court cannot award temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Southwest Human Resource Agency shall provide a panel of physicians from which Ms. Carney may choose an authorized physician for evaluation, and if necessary, treatment of her left wrist carpal tunnel syndrome in accordance with Tennessee Code Annotated section 50-6-204(a)(1)(A) (2016).

2. Ms. Carney's request for medical benefits for her left shoulder injury is denied at this time.

3. Ms. Carney's request for temporary disability benefits is denied at this time.

4. **This matter is set for a Status Hearing on July 10, 2017, at 10 a.m. Central Time. The parties must call toll-free at 855-543-5039 to participate in the hearing.**

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of

9

compliance with this Order to the Bureau by email no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

ENTERED this the _1st_ day of June, 2017.

**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

10

# APPENDIX

Exhibits:
1. Rosa Carney's Affidavit
2. Notice of Denial
3. Employer's First Report of Work Injury
4. Southwest Incident Report
5. FNP Gilliland's November 15, 2016 off work note
6. Excerpt from Southwest's Employee Handbook
7. Employee Acknowledgement of Receipt of Handbook
8. Dr. Masterson's medical records
9. FNP Gilliland's medical records
10. Baptist Memorial Hospital – Tipton medical record
11. Dr. Janovich's medical records
12. Sports Orthopedics and Spine medical bill for 9/1/16 date of service

Technical record:[1]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Request for Evidentiary Hearing in Response to Employee's Request for Expedited Hearing on the Record Only
5. Order Denying Request for Decision on the Record Expedited Hearing and Setting Case for Evidentiary Hearing
6. Employer's Expedited Hearing Brief

---

[1] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the __1st__ day of June, 2017.

| Name | Certified Mail | First Class Mail | Via Email | Service sent to: |
|---|---|---|---|---|
| Rosa Carney, Self-represented Employee | X | X | | 605 Estes Lane Brownsville, TN 38012 |
| John Burleson., Esq., Attorney for Employer | | | X | jburleson@raineykizer.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**

12